AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Indiana

| | |
|---|---|
| United States of America<br>v.<br><br>GABRIEL MCQUAY<br><br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>)    1:18-mj-0055<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 18, 2018__ in the county of __Marion__ in the __Southern__ District of __Indiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(B) | Possession with Intent to Distribute 100 Grams or More of Substance Containing Heroin |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

David M. Salley, DEA Task Force Officer
Printed name and title

Sworn to before me and signed in my presence.

Date:   01/19/2018

_____
Judge's signature

City and state:   Indianapolis, Indiana         Debra McVicker Lynch, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, David M. Salley, a Task Force Officer (TFO) with the United States Drug Enforcement Administration (DEA), being duly sworn, state as follows:

### I. INTRODUCTION & BACKGROUND OF INVESTIGATION

1. I am currently a Task Force Officer with the Drug Enforcement Administration (DEA) assigned to the Indianapolis District Office (IDO) HIDTA Task Force Group 52. I have been employed as a DEA Task Force Officer (TFO) since May 2017. I have been employed with the Indiana State Police (ISP) as a law enforcement officer for over ten years and have worked controlled substance investigations for over two years. My primary duty as a TFO is to investigate criminal violations of the federal controlled substances laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, and 846.

2. During my employment as a law enforcement officer, I have received specialized training in the means and methods by which drug traffickers unlawfully manufacture, import, distribute (and possess with intent to distribute) controlled substances, including, but not limited to, the use of telephones and numerical codes and code words to conduct drug trafficking activities. I have also received specialized training in the ways in which international drug trafficking organizations manufacture and smuggle controlled substances into the United States, as well as the means and methods by which international drug trafficking organizations export the proceeds of their drug trafficking activities.

3. During my employment as a law enforcement officer, I have received specialized training in the enforcement of laws concerning the trafficking of controlled substances. I have also received training regarding, and personally participated in, various types of investigative activity, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing

1

and/or interviewing of defendants, witnesses, confidential sources and other individuals who have knowledge concerning the unlawful trafficking in controlled substances; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; and, (f) the handling and maintenance of evidence.

## II. PRELIMINARY STATEMENT & BASIS OF INFORMATION

4. This Affidavit is made in support of a complaint for Target Gabriel McQUAY. As set forth below, probable cause exists to believe that MCQUAY possessed with intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1).

5. Except as otherwise noted, the information set forth in this Affidavit has been provided to me by members of the DEA Special Agents, Task Force Officers, or other law enforcement agents or officers. Unless otherwise noted, whenever in this Affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Likewise, information resulting from physical surveillance, except where otherwise indicated, does not necessarily set forth my observation, but rather has been provided directly or indirectly through other DEA Special Agents, TFOs, Indianapolis Metropolitan Police Department (IMPD), Indiana State Police (ISP) officers, or other law enforcement officers who conducted the surveillance. Likewise, any information pertaining to vehicles and/or registrations, personal data on subjects, and record checks has been obtained through the Indiana Data and Communications System or the National Crime Information Center computers.

6. Because this Affidavit is being submitted for the limited purpose of securing a complaint, I have not included each and every fact known to me concerning this investigation. I

have set forth only the facts that I believe are necessary to establish the foundation for said application.

### III. FACTS & CIRCUMSTANCES REGARDING PROBABLE CAUSE

7. In or around Fall 2017, the DEA initiated an investigation into McQUAY's suspected heroin trafficking in the Indianapolis, Indiana, area. On numerous occasions throughout the investigation, law enforcement observed MCQUAY at 6904 Michigan Road, Indianapolis, Indiana (the Michigan Road residence), his suspected residence. This single-family residence is located within the Southern District of Indiana.

8. On or about January 16, 2018, the Honorable Debra McVicker Lynch signed a search warrant for the Michigan Road residence. (Cause No. 1:18-mj-00036). My colleagues and I executed this search warrant on or about January 18, 2018.

9. During execution of the search warrant, law enforcement found multiple items of interest to the investigation inside of the Michigan Road residence, including:

    a. Approximately nine (9) ounces of suspected heroin[1] (wrapped up in dirty clothes next to washer and dryer) which field-tested positive for the presence of heroin and fentanyl;

    b. Plastic sandwich baggies (inside of drawer in the kitchen);

    c. Two (2) digital scales[2] (inside drawers in kitchen and on top of the refrigerator in the kitchen);

---

[1] Based on my training and experience and knowledge of this investigation, nine ounces of heroin is a distribution-level quantity and significantly exceeds a user-level quantity.
[2] Based on my training and experience and knowledge of this investigation, I know that drug traffickers frequently use plastic sandwich baggies to package drugs for resale. In addition, drug traffickers use digital scales to process drugs for resale.

    d.    Energy drink bottle with a false compartment (inside refrigerator drawer in the kitchen);

    e.    Western Reserve Group Insurance mail addressed to McQUAY at the address 6904 Michigan Road (inside of drawer in the kitchen); and,

    f.    A Glock model 22, .40 caliber, handgun, serial number SZA306 (located under main living room couch).

10.    There was no one in the Michigan Road residence when law enforcement approached it to execute the search warrant.

11.    Just prior to executing the search warrant, law enforcement observed MCQUAY exit and depart the Michigan Road residence in a green 2002 GMC, license plate 241SW. Law enforcement surveillance officers observed MCQUAY drive southbound on Michigan Road from his residence. A check through Indiana Bureau of Motor Vehicles confirmed MCQUAY's driver's license was suspended. Due to this fact, Indiana State Police Trooper Christopher Waltz (in a marked police vehicle) conducted a traffic stop of MCQUAY's vehicle.

12.    During the traffic stop, Indiana State Police K-9 Trooper Susan Rinschler utilized her K-9 partner to conduct an open air inspection of MCQUAY's vehicle. The Indiana State Police K-9 gave a positive indication for the odor of narcotics in the vehicle. A search of the vehicle was conducted.

13.    Officers asked MCQUAY to exit his vehicle and advised him of his Miranda warnings. After acknowledging that he understood his rights, MCQUAY stated (among other things) the following:

    a.    MCQUAY resided at the Michigan Road residence.

    b.    MCQUAY had approximately two (2) ounces of heroin at the Michigan Road residence wrapped up in dirty clothes.

    c.    There was a Glock pistol under the couch in the living room.

14.    MCQUAY also asked who gave him up (i.e., who informed police of his drug trafficking activities). MCQUAY stated that he was not worried, because it (i.e., the name of the cooperator/informant) would be on the paperwork.

15.    Later on, a follow up interview was conducted at the DEA office. During the interview, which was recorded, MCQUAY affirmed the statements referenced above and provided details regarding his drug trafficking activities.

## IV. CONCLUSION

16.    Based on the foregoing information, I believe that there is probable cause to believe that Gabriel MCQUAY possessed with intent to distribute controlled substances in the Southern District of Indiana, in violation of 21 U.S.C. § 841(a)(1).

_____
David M. Salley, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me this _19_th day of January, 2018.

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

5